**Vanita M. ALBRECHT, as Administrator of the Estate of William G. Albrecht, Deceased, Appellant,**

**v.**

**Jess Daniel RAUSCH, dba Rausch Trucking Company and Melvin Jesse Waddell, Appellees.**

**No. 54624.**

Supreme Court of Iowa.

Jan. 14, 1972.

Reading, Pauley & Horak, Jefferson, for appellant.

Minnich & Neu, Carroll, for appellees.

BECKER, Justice.

This is an appeal from a wrongful death action which was tried to a jury. Verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

In some unexplained manner deceased's 1964 Corvair automobile overturned on Highway 30 sometime before midnight on the night of June 12, 1968. The car rested on a small bridge entirely in the south lane of the east-west highway. Mrs. Cox, driving east, came upon the car, saw it in time to "slam on her brakes", get into the north lane and get around the disabled vehicle. She passed the car, turned around, returned to the scene and parked east of the bridge on the north shoulder.

Clifford Smith was driving in the north lane when he passed the disabled vehicle. He stopped about 130 to 140 feet west of the bridge on the north shoulder, left his lights on, activated his four-way flashers and walked back to the bridge. When he got about 45 or 50 feet from the Corvair he heard someone in the car call for help twice and saw a small light near the pave-

ment. He surmised this was the car's dome light. At this point Smith heard a truck coming from the west and saw lights in the distance. He ran west on the highway waving his arms. The truck passed him when he was about 140 to 150 feet west of the bridge. By this time Mr. Smith had gotten off on the south shoulder. He testified the truck did not slow down as it approached.

Defendant Waddell, the truck driver, testified he was travelling at 48 to 52 miles per hour on a slight downgrade as he approached the bridge. He was driving a five-axle, 49-foot semi-trailer unit that weighed 59,000 to 60,000 pounds with its load. The unit was rated for 73,000 pounds.

Defendant said he noticed the parked car on the north shoulder with its lights on but could not see beyond the car. He lifted his foot off the accelerator. He next saw the legs of a running man about even with the parked car. He put on the brakes. He said he did not see the car on the bridge until he passed the headlights of the Smith car. He turned into the north lane, put on full brakes and tried to stop. The right front bumper struck the Corvair.

Patrolman Bolz was called to the scene and established the physical facts. The highway is a 24-foot concrete roadway up to within 20 feet of the bridge where it widens to 30 feet on each side of the 24-foot long bridge. West of the bridge there is a small knoll which slants down to the bridge. Daytime visibility from the crest of this knoll to the bridge is at least 1000 feet. The shoulders are quite wide, reinforced with rock so there is no dropoff from the hard surface. The rest of the shoulders are grassy. The Corvair came to rest 69 feet east of the bridge and the truck was stopped 170 feet east of the east edge of the bridge. Decedent's body was 96 feet east of the bridge in the westbound (north) lane. The patrolman checked the body and found decedent Mr. Albrecht was dead.

The officer measured skid marks made by the truck which started 50 feet west of the bridge and extended 170 feet east of the east edge of the bridge to where the rear end of the truck stopped. The jury's answers to interrogatories found both defendant and decedent-driver not guilty of negligence. Judgment was therefore entered for defendant.

I. Plaintiff's first assignment of error concerns expert testimony. Mr. Paul Crouse was called as an expert witness. His qualifications are not challenged. He was asked his opinion on how long it would take to stop a five-axle truck, weighing over 27,000 pounds and proceeding at about 50 miles per hour on level paved highway. No other foundation was laid. The witness was taken out of order and the court allowed the opinion (between 250 and 350 feet) to stand "subject to it being connected up for hypothetical purposes by a later showing." The court indicated plaintiff could reserve his objections until a later time.

■ At the close of defendant's evidence plaintiff again objected to the expert testimony on grounds that no proper foundation had been laid for the hypothetical question, the record showed the five-axle tractor weighed over 50,000 pounds, the type of tractor-trailer unit was not considered, the surface of the road was not considered, the slope of the highway was not considered and the question merely directed itself to five-axle rigs in general and not to the specific situation here involved. We conclude the objection was sufficient and should have been sustained.

■ We have recently considered the rules applicable to expert testimony in several cases, including Bernal v. Bernhardt, 180 N.W.2d 437, 439 (Iowa 1970), wherein we said the liberal rule of admission of such testimony at the trial court's discretion is violated where "the facts upon which the opinion is based are not suffi-

ciently stated by the witness". Such facts must be found either in the statements made by the witness or in the other evidence and incorporated in the question. Bernal v. Bernhardt, supra. Here the factual foundation for the question and answer was patently inadequate. Cf. Hedges v. Conder, 166 N.W.2d 844, 856–859 (Iowa 1969). This evidence as to stopping distance affected several issues in the case. Its erroneous admission was prejudicial.

II. Plaintiff's second assignment of error goes to the court's failure to submit the doctrine of last clear chance. He argues that if the evidence is viewed in the light most favorable to plaintiff, Vruegdenhil v. Kunkel, 256 Iowa 460, 462, 127 N.W.2d 630, 632 (1964), a jury question on this issue has been generated.

Plaintiff relies heavily on Vreugdenhil v. Kunkel, supra. We recognized the last clear chance doctrine refers to negligence after negligence and is a phase of proximate cause. Without holding that this proximate cause theory is the sole basis of the doctrine, we examined the essential elements for submission of last clear chance:

"The rule is well settled that the requisites for the application of this doctrine are substantial evidence that 'defendant had (1) knowledge of plaintiff's presence; (2) realization of plaintiff's peril; and (3) the ability to avoid the injury to plaintiff thereafter', and of course failed to do so. (Citations). The defendant must have known of Vreugdenhil's presence and had the means and opportunity, by the exercise of reasonable care, to know of his peril and avoid injuring him. While actual knowledge of his presence is required, this knowledge may be inferred from circumstantial evidence, in spite of a denial by defendant. (Citation). Therefore, it is not necessary to show actual knowledge of the danger, but only that it should have been realized in the exercise of reasonable care. (Citations)." (Loc.

cit. 256 Iowa at page 466, 127 N.W.2d at page 633).

The jury could find that decedent was in a disabled, upended vehicle on the highway unable to extricate himself from a position of peril. Mr. Smith testified he switched his lights to low beam after seeing the disabled vehicle, parked his own vehicle about 120 feet west of the bridge with the lights still on and activated the flashers. He was running up the highway trying to flag defendant's truck when it passed him about 140 to 150 feet from the bridge. He testified the truck did not slow down. This is corroborated by physical evidence. The truck's skid marks began 50 feet west of the bridge.

Defendant-driver was sitting eight feet above the highway well above the height of the average driver. He was driving a semi-trailer unit that had a gross weight of 59,000 pounds. He testified he could not see beyond the lights of the Smith car.

■ The court submitted failure to keep a proper lookout, failure to have the truck under control and duty to so operate as to be able to bring the truck to a stop within the assured clear distance ahead. The burden of plaintiff's complaint is that these specifications were not submitted in connection with the facts as plaintiff claimed they existed; i. e., the facts supporting the last clear chance doctrine. Whether defendant's actions in continuing into this situation in the manner testified to by the witnesses constituted reasonable care and whether such actions were the proximate cause of the accident were properly for the jury.

■■ We note that the court instructed the jury on defendant's theory of sudden emergency. This was proper as it articulated the law in regard to one facet of the defense. The vice in the submission was the failure of the court to also instruct on the law as to one of the important facets of plaintiff's case. Cf. Doser v. Interstate Power Co., 173 N.W.2d 556, 559 (Iowa 1970).

■ III. In Duffy v. Harden, 179 N.W.2d 496, 500 (Iowa 1970), we expressed some doubt as to whether the doctrine of last clear chance is still applicable in light of section 619.17, Code, 1966, which places the burden of pleading and proving contributory negligence on defendant. In light of the necessity for retrial of this action the question should be resolved.

The last clear chance doctrine has been severely criticized by some legal scholars. Prosser, Torts (4th Ed), § 66, p. 427. Nevertheless, as Professor Prosser recognizes, the doctrine is almost universally accepted in certain fact situations. The shifting of the burden of proof does not, in and of itself, affect the doctrine of last clear chance. Most states place the burden of proof of contributory negligence on defendant, 11 Blashfield, Automobile Law and Practice, § 416.7, p. 74 et seq. The same jurisdictions also recognize last clear chance. 1 Blashfield, § 65.1, p. 545.[1] Wilson v. Sereno, 11 Ariz.App. 35, 461 P.2d 514, 515 (1970), states: "Conceptually, it [last clear chance] is a defense to *defendants'* allegation of the contributory negligence of plaintiff. (Citations)." (Emphasis supplied).

■ Stated otherwise the question of who has the burden of proof in relation to contributory negligence is irrelevant to the existence of the doctrine of last clear chance. Of course, the burden to plead and prove last clear chance is on the party

---

1. As examples compare Kolcon v. Smewing, 28 Mich.App. 237, 184 N.W.2d 244 (1970) (last clear chance) with Buchanan v. Cockrill, 385 Mich. 292, 187 N.W.2d 892 (1971) (burden of proof); Jacoboski v. Prax, 290 Minn. 218, 187 N.W.2d 125 (1971) with Cormican v. Parsons, 282 Minn. 94, 163 N.W.2d 41, 45 (1968).

asserting the doctrine. Menke v. Peterschmidt, 246 Iowa 722, 725, 69 N.W.2d 65, 68 (1955); Dorcas v. Aikman, 259 Iowa 63, 72, 73, 143 N.W.2d 396, 403 (1966).

■ IV. Plaintiff also complains of the court's failure to instruct fully on the law in relation to stopping or standing on the highway. Section 321.354, Code, 1966, prohibits stopping on the highway where it is practical to get off the highway. However, section 321.355 contains an exception for disabled vehicles. Under the facts in this case the exception was relevant to the law of the case and should have been covered by the instruction.

■ V. Plaintiff's complaints as to failure to instruct on three of his six specifications are not well taken under the pleadings and evidence in this record. The first omitted specification amounts to a general allegation of negligence. The second relates to duty of care when approaching a bridge. Here the bridge might more properly be called a culvert. We think the trial court was correct in not instructing on this special statutory duty of care. The third specification omitted is a closer question; i. e., failure to heed a clear warning. However, the submission of lookout and control sufficiently covered the situation under the record as developed.

Reversed and remanded.

All Justices concur, except MASON and RAWLINGS, JJ., who concur in the result, and HARRIS, J., who takes no part.

MASON, Justice (concurring specially).

I believe the last clear chance rule is no more than a logical, necessary deduction from the principles of proximate cause. Since the opinion does not fully develop this concept in Divisions II and III, I concur in the result.

RAWLINGS, J., joins in this special concurrence.